**SO ORDERED.**

**SIGNED this 02 day of June, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

SAK DEVELOPMENT, INC.,            CASE NO. 07-02215-8-RDD
                                                        Chapter 11

    DEBTOR.


AMERICAN CONSTRUCTORS OF NORTH
CAROLINA, INC. ,

    PLAINTIFF,

    v.

SAK DEVELOPMENT, INC., PARAGON
COMMERCIAL BANK and MARTIN W.          ADVERSARY PROCEEDING
BORDEN, TRUSTEE,                             NO.  08-00050-8-JRL

    DEFENDANTS.

PARAGON COMMERCIAL BANK,

    THIRD-PARTY PLAINTIFF,

    v.

STEVEN A. KRPATA,

    THIRD-PARTY DEFENDANT.

**ORDER**

The matters before the court are the cross-motions for summary judgment of Paragon Commercial Bank ("Paragon") and of American Constructors of North Carolina, Inc. ("American"). A hearing on these matters was held in Raleigh, North Carolina on May 4, 2010.

**JURISDICTION**

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**UNDISPUTED FACTS AND PROCEDURAL HISTORY**

1. The debtor, SAK Development, Inc. ("SAK") filed its petition for relief under chapter 11 of the Bankruptcy Code on June 18, 2007.

2. SAK was a real estate development company. American served as the general contractor for SAK in all of SAK's development projects and did not perform work for any other developers.

3. SAK and American were both owned and managed by Stephen A. Krpata ("Krpata").

4. On March 1, 2006, SAK entered into a contract to pay $1,985,000.00 to purchase 6.71 acres of real property ("the property") in Pitt County, North Carolina, for the purpose of developing the Tara II condominium project ("the project").

5. American and its subcontractors began clearing the land and constructing improvements on the property on March 16, 2006.

6. In July of 2006, Krpata entered into an agreement with Paragon to fund $6,000,000.00 for the land acquisition and development of the project. In exchange, Paragon was to have a first priority deed of trust on the property.

7. Before closing the loan, Paragon commissioned an appraisal of the property, which contained photographs illustrating the horizontal and vertical construction already underway. The appraisal was dated July 31, 2006.

8. Attorney Phillip Dixon ("Dixon") was selected to close the loan; he acted as the closing agent for both parties.

9. On August 1, 2006, Paragon issued closing instructions and delivered a number of closing documents to Dixon. Specifically, Dixon was instructed to secure Paragon's first priority security interest in the property.

10. The loan closing occurred on August 2, 2006. Dixon assisted Krpata in executing the loan documents; Paragon was not present.

11. Among the closing documents was an affidavit of liens ("the lien affidavit"), required by Investors Title Insurance Company ("Investors") to be executed by the property owner, SAK, and the general contractor, American. Investors' forms were provided for the purpose of issuing title insurance on Paragon's deed of trust.

12. The lien affidavit directs the affiant to select one of four options containing descriptions of the amount of construction or improvements on the subject property. If no options are selected the form defaults to option (a), which states:

> Seller/Borrower states that there has been no work, labor, or materials for repairs, additions or improvements made, ordered or contracted to be made on the premises, within 120 days from the date hereof, nor are there any improvements or fixtures attached to the premises which have not been paid for in full; and that there are no

outstanding or disputed claims for any such work or items.

13. No options were checked on the lien affidavit, so option (a) became the default choice. Because it applies only to the Seller/Borrower and American was neither, American made no representation in the lien affidavit.

14. In his deposition, Krpata testified that he informed Dixon that the lien affidavit was ambiguous and that none of the options reflected the existing circumstances, where there were, in fact, unpaid claims but all were to be brought current out of the loan proceeds. Krpata further testified that Dixon told him that the closing instructions provided that no changes could be made to the forms and that he (Dixon) would follow up on the matter.

15. Attached to the lien affidavit was a "Waiver of Liens" form whereby any "subcontractors, materialman, or other persons furnishing services or labor or materials" waive any lien they may have on the property subject to the deed of trust. This waiver was not executed by SAK, American, or Krpata in any capacity.

16. At the loan closing, a settlement statement was executed that provided for disbursements to be made to various parties by Dixon from the loan proceeds. The settlement statement reflects a draw taken at closing in the amount of $2,569,932.00, from which the purchase price for the property was paid, along with various other third party payments for work already completed on the project. The remaining $490,861.40 was disbursed directly to SAK.

17. Paragon's deed of trust was recorded in the Pitt County Register of Deeds on August 2, 2006. The deed of trust secures the initial principal advance of $1,985,000.00 used to acquire the property and purports to secure additional amounts advanced at closing plus

any future advances on a first priority basis.

18. American continued its construction efforts on the project after the loan closed.

19. In May 2007, SAK defaulted on the loan. Facing severe financial difficulty, American filed for chapter 11 protection on June 6, 2007, followed by SAK on June 18, 2007, and Krpata's individual chapter 7 petition on June 27, 2008.

20. As a creditor of SAK, Paragon asserts that it is owed $5,769,080.50 in principal, interest, and fees outstanding on the loan.

21. American filed a proof of claim in SAK's case on September 17, 2007, which incorporated its duly filed claim of lien and notice of lis pendens and asserted a secured claim of $852,564.01.

22. On November 13, 2007, the property was sold free and clear of liens pursuant to 11 U.S.C. § 363. Paragon placed the high bid at $4,300,000.00. American objected to Paragon's purchase of the property based on its assertion that Paragon did not have the superior security interest. To protect American's lien rights, this court required Paragon to obtain an irrevocable letter of credit in the amount of $1,000,000.00 payable to American in the event American's lien is found to be valid and prior to Paragon's deed of trust. The letter of credit is on deposit with the Clerk of the United States Bankruptcy Court for the Eastern District of North Carolina and constitutes proceeds to which American's lien may attach.

23. The purpose of this adversary proceeding is to determine the amount and priority of American's lien in the funds represented by the letter of credit.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), incorporated by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In making this determination conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

**ANALYSIS**

**I.**

American moves for partial summary judgment on the issue of lien priority, asserting that no genuine issue of material fact exists as to whether American has a materialman's lien that is superior to all but the purchase money portion of Paragon's deed of trust.[1] In response, Paragon argues that the court should use its equitable powers to adjust the parties' lien rights such that American is estopped from claiming a superior lien on the property.

North Carolina General Statute § 44A-8 creates the potential for a springing lien on real

---

[1] The issue of the amount of American's lien is subject to factual disputes and is reserved for trial.

property in favor of any person who furnishes labor or materials to improve real property pursuant to a contract with the property owner[2] in order to secure payment of debts owing for labor or services provided under the contract. To perfect a materialman's lien, the claimant must file a claim of lien in the office of the clerk of superior court in the county where the real property is located within 120 days of the last furnishing of labor or materials to the site of the improvement. N.C. GEN STAT. § 44A-12. If the real property is under the jurisdiction of a bankruptcy court, the claimant must file a proof of claim in the bankruptcy case and file a notice of lis pendens in the county where the property is located within 180 days of the last furnishing of labor or materials in order to enforce the lien. § 44A-13. A perfected lien relates back to and is effective from the date of the "first furnishing" of labor or materials to the construction site.[3] § 44A-10. Thus, a materialman's lien shall be "deemed prior to any liens or encumbrances attaching to the property subsequent to the date of the contractor's first furnishing of labor or materials to the construction site." Frank Conner Co. v. Spanish Inns Charlotte, Ltd., 294 N.C. 661, 667 (1978).

      The priority of a materialman's lien can be subordinated to an intervening purchase money deed of trust by application of the common law doctrine known as instantaneous seisin. Under the doctrine, "when a deed and a purchase money deed of trust are executed, delivered

---

[2] An enforceable contract for the sale of land creates a sufficient equitable interest to satisfy the ownership requirement of § 44A-8. Carolina Builders Corp. v. Howard-Veasey Homes, Inc., 72 N.C. App. 224, 231 (1985).

[3] The first furnishing of labor or materials must "constitute a 'visible commencement of an improvement' sufficient to put a prudent man on notice that a possible improvement is underway and that the property might be subject to a lien under G.S. 44A-8." Frank Conner Co. v. Spanish Inns Charlotte, Ltd., 294 N.C. 661, 672 (1978).

and recorded as part of the same transaction, the deed of trust attaches at the instant the vendee acquires title and constitutes a lien superior to all others." Carolina Builders Corp. v. Howard-Veasey Homes, Inc., 72 N.C. App. 224, 232 (1985). Non-purchase money funds loaned in conjunction with the purchase money deed of trust are excepted from the superceding purchase money lien. "[U]nder the doctrine of instantaneous seisin, a deed of trust securing the purchase price of property as well as construction or development loans, is superior to a previously existing materialman's lien, but only to the extent that the deed of trust secures the purchase price of the property." Dalton Moran Shook, Inc. v. Pitt Dev. Co., 113 N.C. App. 707, 714 (1994).

     The facts that support American's claim of lien are wholly undisputed. It is clear from the record that American furnished labor and materials to improve the property by clearing the land and constructing condominium units and other infrastructure according to a contract with SAK, for which American remains partially unpaid. Under the standard set forth in Carolina Builders, SAK's contract to purchase the land is a sufficient equitable interest to support ownership under § 44A-8. It is unquestioned that American's last furnishing of labor and materials to the project extended through September 14, 2007, the date that American filed a proof of claim with the bankruptcy court that incorporated its duly filed claim of lien and notice of lis pendens. Based on North Carolina General Statute §§ 44A-8 through A-13 and the undisputed record, the court finds that American is entitled to a materialman's lien that relates back to American's first furnishing of labor and materials to the project.

     On the issue of priority the facts are also clear and uncontroverted. American first furnished labor and materials to the project on March 16, 2006, while Paragon's deed of trust

8

was not recorded until August 2, 2006. Section 44A-10 of North Carolina's General Statutes provides that American's lien is prior in time to Paragon's lien. However, American concedes that the purchase money portion of Paragon's deed of trust is superior to American's materialman's lien by virtue of the doctrine of instantaneous seisin, but only to the extent of the $1,985,000.00 used to purchase the property. The remainder of the initial loan disbursement was used to pay for construction completed prior to the loan closing or disbursed to SAK and thus does not supercede the materialman's lien.

Paragon does not argue that American is not entitled to a materialman's lien as of March 16, 2006, nor does Paragon seriously argue that American, in fact, waived or subordinated its lien rights to Paragon's deed of trust. Instead Paragon argues that the court should "exercise its equitable powers to 'adjust' the Lien Affidavit" because Krpata intended to grant Paragon a first priority lien when he executed the loan documents. Aside from Paragon's equitable argument, which will be addressed in response to Paragon's motion for summary judgment, the record clearly shows that American did not waive or subordinate its materialman's lien to Paragon's deed of trust.

## II.

Paragon moves for summary judgment under the doctrine of equitable estoppel. Relying on agency theory, Paragon asserts that Krapata's knowledge and the representations he made as an individual and as president of SAK and American should be imputed to American, and therefore American should be estopped from asserting a claim of lien superior to Paragon's deed of trust. In response, American argues that Paragon cannot establish the elements of equitable estoppel and further that equitable estoppel is not applied in North Carolina to upset a valid lien.

9

"Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment." Gore v. Myrtle/Mueller, 362 N.C. 27, 33 (2007). To prevail under a theory of equitable estoppel, the moving party must establish all of the elements of estoppel as related to the party estopped and as to the party asserting the defense. The essential elements relating to the party estopped are: "(1) conduct . . . which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." Id. at 39. In addition, the party claiming estoppel must prove that it (1) "lack[ed] the knowledge and the means of knowledge as to the real facts in question; and (2) [] relied upon the conduct of the party sought to be estopped to [its] prejudice." Id. Unless all of the elements are clearly established in the record, summary judgment is not appropriate. Paragon asserts that Krpata deceived the lender to its detriment by executing loan documents that did not secure Paragon's first lien position with knowledge that Paragon required a first priority lien as security for the loan. First, Paragon contends that Krpata, as American's agent, concealed material facts by signing Investors' lien affidavit without selecting any of the four options, so that by default the form indicated that no work had taken place on the property in the previous 120 days. For additional support Paragon points to other loan documents executed by Krpata in his capacity as president of SAK, which purport to secure Paragon's first priority deed of trust and indicate that the property was not subject to any other liens. Then Paragon asserts that Krpata intended for Paragon and Investors to rely on the loan documents and that Paragon and Investors justifiably relied on the representations made therein.

Finally, Paragon contends that Krpata was the only person with knowledge of the facts because Paragon never saw the lien affidavit and Investors had no reason to know that construction was already underway. Paragon argues that if Investors had known that the lien affidavit was inaccurate, then it would not have insured the deed of trust, and Paragon would have remained unharmed because the loan would not have closed.

American does not deny that Krpata signed the lien affidavit knowing that it was incorrect but instead asserts that Krpata did not attempt to conceal material facts from Paragon or anyone else. Krpata did not check the box indicating that no work had been performed on the property, and he did not execute the lien waiver attached to the affidavit. In his deposition, Krpata testified that he informed the closing attorney that the lien affidavit did not contain an appropriate option and that in response Dixon told him that the form could not be modified and indicated that he (Dixon) would follow up on the matter. Regardless of the representations made by default on the lien affidavit, American argues that Paragon cannot rely on a form that, by its own admission, it never saw. Moreover, American argues that Paragon cannot substitute Investors to satisfy the elements of the party seeking estoppel because Investors is not a party to this proceeding.[4]

Moving beyond the lien affidavit, which American contends is a red herring, American argues that Paragon's knowledge of the state of construction prior to the loan closing precludes its ability to establish the essential elements of equitable estoppel. Contrary to Paragon's

---

[4] American cites Gore v. Myrtle/Mueller, 362 N.C. 27, 33 (2007) and Hawkins v. M&J Finance Corp., 238 N.C. 174, 178 (1953), to support its assertion that *the party asserting the estoppel defense* must lack the knowledge and the means of knowledge as to the real facts in question.

assertion that Krpata falsified the lien affidavit to induce the loan closing on the basis that work was not in progress, American contends that the draw requests submitted to Paragon in advance of the closing demonstrate American's intent that Paragon be fully informed about the status of construction so that Paragon would fund the completed work from the initial loan disbursement. Not only did American not intend for Paragon to rely on the representations made in the lien affidavit to inform Paragon about the state of construction prior to the loan closing, American argues that Paragon did not, in fact, rely on Krpata to provide it with such information. The record shows that Paragon commissioned an appraisal of the property dated July 31, 2006, which contains photographs clearly depicting work in progress. In the deposition of Greg Steele, Paragon's loan officer, Steele admits that he was aware that construction had begun prior to the loan closing. On this basis, American contends that Paragon cannot establish that it lacked knowledge and the means of knowledge of the real facts in question.

American contends, and the court agrees, that Paragon was in the best position to protect itself at the lien closing, where Paragon was represented by counsel to whom Paragon provided specific closing instructions. Paragon provided the forms to be used at the loan closing but failed to include or insist upon the execution of a lien waiver or subordination agreement. The only lien waiver provided was part of Investors' lien affidavit, which Paragon did not receive nor review. Paragon knew full-well the extent of construction completed prior to the loan closing and had the opportunity to attend the closing, review the loan documents, and demand that a lien waiver be executed before disbursing any funds, but Paragon chose not to do so.

The court finds that the record shows without a doubt that American has a statutory materialman's lien that predates Paragon's deed of trust on the property. No lien waiver or

subordination agreement was executed. Paragon's only defense is equitable estoppel, which has not been applied in North Carolina, a pure race state, to trump a statutory lien where the lender neglected to obtain a lien waiver.[5] Even if it were appropriate to apply equitable estoppel in such a situation, Paragon simply cannot establish the doctrine's essential elements.

Based on the record, it is clear that American did not misrepresent the state of construction to Paragon or intend for Paragon to rely on the representations made in the lien affidavit. Paragon was fully informed in this regard, and the document upon which Paragon bases its defense was not relied upon by Paragon to establish its knowledge of the material facts. At most, Krpata misrepresented to Investors the status of pre-closing construction by signing the lien affidavit without checking any of the four boxes or indicating that construction had previously commenced. By failing to select an option, the form defaulted to option (a) "No recent Improvements," where the "Seller/Borrower" represent that no labor or materials have been furnished to the site within 120 days. Unlike the remaining options, option (a) does not contain any warranties by the General Contractor. Krpata signed the form in his capacities as president of American and as president of SAK, but any false "representation" made by option (a) is properly attributed to SAK as "Borrower." Paragon urges the court to impute all representations made by Krpata to American under agency principles, but Paragon makes no argument for piercing the corporate veil or any other argument sufficient to persuade the court to disrespect Amercian's corporate form. Even if Krptata's representations were imputed to American, the facts viewed in the light most favorable to American indicate that Krpata told

---

[5]Paragon was unable to cite a single case to support the application of equitable estoppel to upset the priority of a valid lien.

Dixon that the form was inaccurate. Krpata did not induce Paragon to grant the loan by sneaking a falsified document past the closing attorney. Instead Krpata pointed out the discrepancy and, after being told by Dixon that he could not modify the form, chose not to select an unsuitable option. Under the very same agency principles that Paragon urges the court to apply to American, the closing agent's knowledge that the lien affidavit was inaccurate can be imputed to Paragon. Equitable estoppel does not allow a lender, who knew that construction was underway and failed to secure a lien waiver, to subordinate a valid materialman's lien because of a representation made in a document that the lender never saw.

Based on the foregoing, Paragon's motion for summary judgment is **DENIED**, and American's motion for partial summary judgment is **GRANTED**. The court holds that Paragon is entitled to a first priority lien for $1,985,000.00, American is entitled to a second priority materialman's lien for an amount to be determined at a later date, and the remainder of Paragon's claim falls behind American's lien in third priority.

**"END OF DOCUMENT"**